UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN P. LEWIS,                        )
                                        )
              Plaintiff,                )
                                        )
                                        )    CIVIL ACTION NO.
        v.                              )    19-12500-DPW
                                        )
MATTHEW A. HILL, MARGIE JOANNE          )
HILL, DAVID ROBERT MOORE, JEFFREY       )
STOLLER, AND CLOSEDRPLA HOLDINGS,       )
INC.,                                   )
                                        )
              Defendants.               )

MEMORANDUM AND ORDER
July 24, 2023

TABLE OF CONTENTS

I. BACKGROUND.................................................. 5

   A.  Facts .................................................. 5

   1.  The Parties .......................................... 6

   2.  Mr. Lewis's Stock ................................... 7

   3.  Sale Negotiations and Alleged Deception ............. 8

   4.  Sale of Assets and Leadership Changes .............. 11

   5.  Subsequent Events .................................. 12

   B.  Travel of this Case to Date ........................ 13

II. RELEVANT STANDARDS OF REVIEW.............................. 14

   A.  FED. R. CIV. P. 12(b)(2) ........................... 14

   B.  FED. R. CIV. P. 12(b)(6) ........................... 15

   C.  Transfer Statutes: 28 U.S.C § 1404(a), § 1406(a), and .. 16

   § 1631 ................................................. 16

   1.  Transfer under 28 U.S.C. § 1406(a) and § 1631 ......... 17

   2.  Transfer under 28 U.S.C. § 1404(a) ...................... 19

III. PERSONAL JURISDICTION.................................... 23

   A.  Legal Requirements ................................. 24

   1.  Massachusetts Long-Arm Statute ...................... 24

   2.  Due Process Clause Generally ........................ 25

   B.  Application to Defendants ........................... 27

   1.  Dr. Hill and Mr. Moore ............................... 27

   2.  Mr. Stoller ......................................... 31

   3.  Mr. Hill and ClosedRPLA ............................. 33

   C.  Propriety of Transfer .............................. 35

   1.  Venue Availability ................................. 36

   2.  Claims against Dr. Hill, Mr. Moore, and Mr. Stoller .... 40

   3.  Claims against Mr. Hill and ClosedRPLA ............... 44

IV. FORUM-SELECTION CLAUSE................................... 46

   A.  Choice-of-Law ...................................... 46

   B.  The Clause at Issue ................................ 47

   1.  Is the forum-selection clause in effect? ............. 48

   2.  Is the forum-selection clause enforceable? ........... 50

3.   Does the forum-selection clause exclude a federal forum? 54

C.   Propriety of Transfer ................................. 58

V. MERITS ISSUES.......................................... 64

VI. FINAL CONSIDERATIONS................................... 64

VII. CONCLUSION........................................... 65

Plaintiff Steven Lewis is the minority shareholder and a former employee of OpenALPR Technology, Inc. ("OpenALPR"), a software startup founded by Defendant Matthew Hill, who is the company's majority shareholder and board chair.  Mr. Lewis became an OpenALPR sales representative by an agreement with the company, through Mr. Hill.  By a separate stock purchase agreement with the company, through Mr. Hill, Mr. Lewis acquired shares in OpenALPR.  Mr. Lewis originally brought this action in Massachusetts state court alleging breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Mr. Hill and several other affiliated parties.  The defendants removed the case to this court.

In this court, the defendants press motions to dismiss the Complaint as a way to terminate further travel of the case.  For his part, Mr. Lewis has failed to take steps to recalibrate the litigation to assure proper alignment of the parties in some other jurisdiction in which personal jurisdiction could properly be exercised and permit his case to proceed further in its entirety.

Consequently, I raised *sua sponte* — after notice and an opportunity to be heard by all parties — the question whether to transfer this case in its entirety to the United States District Court for the Middle District of Florida where it appears the matter can be fully litigated against all parties now before

4

this court.  The parties, however, have declined to move from
their formally stated positions or even make a docket submission
formally advising the court of that declination.

With full consideration of the implications of transfer for
the private interests of parties having disparate resources, I
have determined to transfer this poorly pled case, awkwardly
joining vaguely identified claims as to inadequately
differentiated defendants, to the Middle District of Florida.
This will not only serve the public interest in efficient
deployment of available judicial resources, it will also permit
Mr. Lewis an opportunity to pursue his several claims in a
single court appropriate to hear them.  In this Memorandum and
Order, I provide my reasons for taking this initiative by
detailing at length my evaluation of the arguments presented by
the defendants, who — for their part — have carefully and
strategically avoided asking for transfer as an alternative to
dismissal, although both are manifestly available.

## I.  BACKGROUND

### A.   *Facts*

The alleged facts, as set forth in the Complaint and
developed further in underlying documents, the authenticity of
which is not disputed, *cf. Rivera* v. *Centro Medico de Turabo,
Inc.*, 575 F.3d 10, 15-16 (1st Cir. 2009), are as follows.

1.   <u>The Parties</u>

Plaintiff **Steven Lewis**, a Massachusetts resident, is a
minority shareholder and former officer and director of
OpenALPR, a software company incorporated in Florida.  [Dkt. No.
1-3 ¶¶ 1, 8, 21; *see* Stock Purchase Agreement, Dkt. No. 9-4 at
introductory paragraph (identifying OpenALPR as Florida
corporation with address in Michigan); Sales Rep Agreement, Dkt.
No. 9-6 at Art. 14 (listing Michigan address for OpenALPR).]

Defendant **Matthew Hill**, an Alabama resident, is the
founder, majority shareholder, president, secretary, treasurer,
and chairman of the board of ClosedRPLA Holdings, Inc. –
formerly known as OpenALPR.  [Dkt. No. 1-3 ¶¶ 2, 6, 20]

Defendant **ClosedRPLA Holdings, Inc.** is a Florida
corporation, with a principal place of business in Jacksonville,
Florida.  [*Id.* ¶ 6]

Defendant **Dr. Margie Joanne Hill** is Defendant Matthew
Hill's wife and an Alabama resident. [*Id.* ¶¶ 3, 19]  Defendant
**David Robert Moore** is Defendant Matthew Hill's father-in-law,
Dr. Hill's father, and, as alleged in the Complaint, a South
Carolina resident. [*Id.* ¶¶ 4, 19; *but see* Declaration of David
Moore in Support of Rule 12(b)(2) Motion, Dkt. 9-9 ¶ 4
(attesting to legal residency in, and citizenship of,
Virginia).]  These two defendants, together with Defendant

Matthew Hill, are the new directors of ClosedRPLA. [Dkt. No. 1-
3 ¶¶ 19-20, 23]

Defendant **Jeffrey Stoller**, a Florida resident, is an
attorney who was representing OpenALPR and ClosedRPLA during the
events at issue. [*Id.* ¶¶ 5, 19, 21-22]

2.   Mr. Lewis's Stock

In January 2016, Mr. Lewis joined OpenALPR, then owned
solely by Mr. Hill, as a sales representative and board
director. [*Id.* ¶ 7] Mr. Lewis entered into a "Sales Rep
Agreement" with OpenALPR, through Mr. Hill, defining the
compensation he was to receive. The Sales Rep Agreement, which
is undated, commenced on January 13, 2016. [Dkt. No. 9-6 at
Art. 11] The Sales Rep Agreement contains a "Governing Law"
provision that provided, "This Agreement shall be construed and
enforced according to the laws of the State Florida [sic] and
any dispute under this Agreement must be brought in this venue
and no other." [*Id.* at Art. 17]

In April 2016, Mr. Lewis and Mr. Hill agreed on an equity
plan, which they reduced to writing in December 2017 as a "Stock
Purchase Agreement" between Mr. Lewis and OpenALPR, through Mr.
Hill. [Dkt. No. 1-3 ¶ 8; *see* Dkt. No. 9-4] According to the
equity plan, OpenALPR's stock consisted of 1,000 shares, all of
which had previously been issued to Mr. Hill. [Dkt. No. 9-4 at
Art. 6.1] Under the plan, Mr. Lewis purchased 200 shares, for a

penny per share, [*id.* at Art. 2.1], to vest on the following
schedule: 1) 50 shares immediately; 2) 50 shares on the earlier
of January 1, 2018 or $700,000 in company revenue; 3) 50 shares
on the earlier of January 1, 2019 or $1.2 million in revenue;
and 4) 50 shares on the earlier of January 1, 2020 or $1.7
million in revenue.  [*Id.* at Art. 5.3]  The plan also provided a
repurchase right under which OpenALPR could repurchase, for the
price of a penny a share, any or all shares belonging to Mr.
Lewis that had not yet vested upon "his. . . cessation of
Service" to the company.  [*Id.* at Art. 5.1.]  Mr. Lewis and Mr.
Hill, on behalf of OpenALPR, agreed that "interpretation,
performance, and enforcement" of the Stock Purchase Agreement
would be "governed by the laws of the State [sic] of
Massachusetts without giving effect to that State's choice of
law or conflict-of-laws rules."  [*Id.* at Art. 8.3]

By the end of the first quarter of 2018, of the 1,000
shares, 800 had been issued to Mr. Hill, 100 had been issued to
Mr. Lewis under the equity plan, and the final 100 had been
purchased by Mr. Lewis but not yet distributed, subject to the
equity plan's vesting schedule.  [Dkt. No. 1-3 ¶ 9]

### 3.  Sale Negotiations and Alleged Deception

Mr. Hill started negotiations to sell OpenALPR near the end
of the first quarter of 2018 – presumably in late March or early
April 2018, although the Complaint does not specify a date or

month.  [*Id.* ¶ 10]  At that point, Mr. Hill is alleged to have begun discussing a potential customer relationship with Brekford Traffic Solutions, a subsidiary of Novume Solutions.  [*Id.*]

Around the same time, things became rocky for Mr. Lewis at work.  In April 2018, Mr. Hill sought to reduce Mr. Lewis's commissions in a departure from the previously negotiated Sales Rep Agreement.  Although Mr. Lewis agreed reluctantly, this change required Mr. Lewis to take on a second job for additional income.  [*Id.* ¶ 13]  In June 2018, Mr. Lewis told Mr. Hill about his need for the second job.  [*Id.*]  Mr. Hill then presented Mr. Lewis with a "Redemption Agreement" for his 100 unvested equity plan shares.  [*Id.*]  The Redemption Agreement provided that, "in accordance with Article 5 of the Stock Purchase Agreement . . . OpenALPR . . . has elected to redeem and repurchase on June 18, 2018 . . . all one hundred (100) of its issued and outstanding shares of Common Stock which have not vested under the terms of the Stock Purchase Agreement [the equity plan]. . . ."  [Dkt. No. 9-5 at 2]  Mr. Hill told Mr. Lewis he was required to sign this agreement under the terms of the equity plan and Mr. Lewis did so.  [Dkt. No. 1-3 ¶ 13]  In July 2018, Mr. Hill fired Mr. Lewis without cause and did not pay him his July commissions. [*Id.* ¶ 14]

Mr. Lewis now says he was not properly required to sign the Redemption Agreement, because, *inter alia*, he continued to

provide services for the company as a part-time sales representative.  [*Id.* ¶ 13]  The text of the Stock Purchase Agreement gives the company the right to purchase unvested shares when the employee ceases "Service."  [Dkt. No. 9-4 at Art. 5.1]  "Service" is defined to include "performance of services for the Company . . . in the capacity of an employee, subject to the control and direction of the employer entity as to both the work to be performed and the manner and method of performance."  [*Id.* at Art. 1]

Meanwhile, negotiations with Novume involving Mr. Hill apparently advanced.  On or around August 30, 2018, on behalf of OpenALPR, Mr. Hill signed a nondisclosure agreement with Novume as part of Novume's potential acquisition of OpenALPR.  [Dkt. No. 1-3 ¶ 10]  Mr. Lewis was unaware of negotiations to sell OpenALPR to Novume and was unaware that Mr. Hill had signed a nondisclosure agreement in connection with the potential acquisition.  [*Id.* ¶¶ 10, 11]

In the days surrounding the signing of the nondisclosure agreement – and leading up to the sale – Mr. Hill sought multiple times to buy Mr. Lewis's vested shares of stock.  On or around August 20, 2018, Mr. Hill offered to buy Mr. Lewis's 100 shares for $90,000.  [*Id.* ¶ 11]  Mr. Lewis declined.  [*Id.*]  On September 4, 2018, Mr. Hill again offered to buy Mr. Lewis's 100 shares for $90,000, and Mr. Lewis again declined.  [*Id.*]

Sometime after firing Mr. Lewis — although not on a date or in a month specified in the Complaint[1] — Mr. Hill bought, for nominal consideration, the 100 unvested shares that the company had redeemed from Mr. Lewis.  [*Id.* ¶ 15]  A board resolution bearing the date of June 18, 2018 authorized the issuance of treasury stock to Mr. Hill.[2]  [*Id.* ¶ 16]

4.  <u>Sale of Assets and Leadership Changes</u>

Mr. Hill made Mr. Lewis aware of the potential sale on September 16, 2018, when he sent him a letter drafted by Mr. Stoller.  [*Id.* ¶ 17]  In the letter, Mr. Hill asked for Mr. Lewis's consent to sell OpenALPR for $4.5 million "or more." [*Id.*]  The signed letter, which left blank the number of shares Mr. Lewis owned, would have made Mr. Hill Mr. Lewis's proxy to vote Mr. Lewis's shares.  [*Id.*]  Mr. Lewis did not consent. [*Id.* ¶ 18.]  Going it alone, Mr. Hill on September 17, 2018, signed a letter of intent to sell the assets of OpenALPR to Novume for $15,000,000.  [*Id.* ¶ 18.]

Some six months later, on March 9, 2019, Mr. Hill scheduled a shareholder meeting — at which Mr. Hill and Mr. Lewis, the two shareholders, were apparently in attendance. [*Id.* ¶ 19]  Mr.

---

[1] In the narrative of his Opposition to the Motion to Dismiss, but not in the Complaint at issue before me, Mr. Lewis asserts this happened in September 2018.  [Dkt. No. 12 at 7]

[2] The document's metadata, however, indicates this document was actually created some three months later on September 14, 2018, three days before the subsequent sale. [Dkt. No. 1-3 ¶ 16]

Stoller presided.  [*Id.*]  Mr. Lewis abstained from voting on the proposed asset sale to Novume and voted against the proposed slate of new directors consisting of Mr. Hill, Dr. Hill, and Mr. Moore.  [*Id.*]  Both initiatives passed, however, on the basis of Mr. Hill's vote of the majority of shares.  [*Id.*]

Immediately after the shareholder meeting, the new board of directors met, during which time the proposed asset sale to Novume was ratified; Mr. Hill was elected president, secretary, and treasurer; Mr. Lewis was removed as vice-president; and the name of the company was changed to ClosedRPLA Holdings, Inc. [*Id.* at ¶ 20]

Before and after the shareholder meeting, Mr. Lewis says he tried to get information about the proposed asset sale to Novume and tried to resolve his dispute with Mr. Hill about his equity interest in the company and his unpaid commissions from July. [*Id.* ¶ 21]  Mr. Stoller made unspecified "affirmative misrepresentations" to Mr. Lewis about the terms of the proposed asset sale to Novume.  [*Id.*]

5.  Subsequent Events

On July 5, 2019, Mr. Stoller sent Mr. Lewis an email informing him that if he did not accept Mr. Hill's settlement proposal, Mr. Hill might put the sale proceeds in risky investments.  [*Id.* ¶ 22]

At some point unspecified in the Complaint, Mr. Lewis

learned that Mr. Hill used company funds for personal
expenditures, such as plane tickets and to invest in
cryptocurrency.  [*Id.* ¶ 24]  Mr. Hill is also alleged to have
taken distributions from the company and failed to make pro rata
distributions to Mr. Lewis as required.  [*Id.*]

**B.    *Travel of this Case to Date***

On October 28, 2019, Mr. Lewis filed suit against the five
Defendants in Norfolk Superior Court in Massachusetts.  [Dkt.
No. 1-3 at 2]  Defendants removed [Dkt. No. 1] the case to
federal court on the basis of diversity jurisdiction, pursuant
to 28 U.S.C. § 1441, bringing it before me on December 12, 2019.

The Complaint identifies four Counts.  Count I alleges
breach of fiduciary duty against not only Mr. Hill, but also Dr.
Hill and Mr. Moore, part of which apparently relates to Mr.
Lewis's claim concerning his unpaid commissions [Dkt. No. 1-3
¶¶ 25-28]  Count II, for aiding and abetting breach of fiduciary
duty, is against Dr. Hill, Mr. Moore, and Mr. Stoller.  [*Id.*
¶¶ 29-30]  Count III seeks "an accounting to determine the
extent to which corporate funds were misused by" Mr. Hill for
personal expenses.  [*Id.* ¶¶ 31-32]  Count IV seeks equitable
relief to enjoin ClosedRPLA from distributing or transferring
assets to risky investments.  [*Id.* ¶¶ 33-36]

Defendants — who are all represented by the same counsel —
have moved to dismiss Mr. Lewis's Complaint.  Mr. Hill and

ClosedRPLA move to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim within the jurisdiction of this court. [Dkt. No. 9 at 1] Dr. Hill, Mr. Moore, and Mr. Stoller join that Rule 12(b)(6) motion, and they also move separately to dismiss pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. [*Id.* at 1]

## II. RELEVANT STANDARDS OF REVIEW

### A.   *FED. R. CIV. P. 12(b)(2)*

A FED. R. CIV. P. 12(b)(2) motion to dismiss challenges whether a court has personal jurisdiction over at least one of the defendants. Because the parties have not asked for an evidentiary hearing, I apply the prima facie standard to determine whether Mr. Lewis has met his burden of establishing that this court has personal jurisdiction over Dr. Hill, Mr. Moore, and Mr. Stoller. *U.S.* v. *Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the question is whether Mr. Lewis has "proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips* v. *Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008).

Mr. Lewis may not rest upon his pleadings but must "adduce evidence of specific facts." *Foster-Miller, Inc.* v. *Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995). In this regard, the standard is akin to the summary judgment standard, in that I

"must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing," a process that has the benefit of "screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." *Id.*; *see also Barrett* v. *Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) ("In order to defeat a motion to dismiss for want of *in personam* jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality.")

## B.    FED. R. CIV. P. 12(b)(6)

Under FED. R. CIV. P. 12(b)(6), the question "is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Ocasio-Hernandez* v. *Fortuno-Burset*, 640 F.3d 1, 7 (1st Cir. 2011).  Factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).  In making my evaluation, I "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Duke* v. *Community Health Connections, Inc.*, 355 F. Supp. 3d 49, 54 (D. Mass. 2019).  However, I will not accept as true any legal

conclusions.  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Finally, "without converting the motion into one for summary

judgment," I may consider "matters incorporated by reference or

integral to the claim, items subject to judicial notice, matters

of public record, orders, items appearing in the record of the

case, and exhibits attached to the complaint whose authenticity

is unquestioned."  5B Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 1357, at 376 (3d ed. 2004); *see Tellabs,*

*Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007);

*Rivera*, 575 F.3d at 15.

## C.    *Transfer Statutes: 28 U.S.C § 1404(a), § 1406(a), and § 1631*

Although none of the parties has formally moved to transfer

this case, I am obligated under certain circumstances to

consider whether transfer, rather than dismissal, is

appropriate.  I may order transfer *sua sponte*, *see Narragansett*

*Elec. Co.* v. *EPA*, 407 F.3d 1, 8 (1st Cir. 2005)(under 28 U.S.C.

§ 1631); *Desmond* v. *Nynex Corp.*, No. 94-1230, 37 F.3d 1484, 1994

WL 577479, at *3 (1st Cir. Oct. 20, 1994) (under 28 U.S.C §

1404(a) and § 1406(a)) (per curiam) (unpublished); however, best

practice is to "make that possibility known to the parties so

they may present their views about the desirability of transfer

and the possible transferee court," *see* 15 Charles Alan Wright et

al., Federal Practice and Procedure § 3844, at 47, 50 (4th ed. 2013).

I, in fact, did so at the November 24, 2021 motion hearing
in this matter.  While Plaintiff's counsel observed, after I
raised the issue, that it "sound[ed] like [counsel for the
parties] should be talking to each other," [Transcript of Motion
Hearing at 26:6-7, *Lewis* v. *Hill et al.*, No. 1:19-cv-12500-DPW
(ECF No. 18) (D. Mass. Nov. 24, 2021)], the parties have made no
submissions on the docket since then regarding an alternative to
transfer.  Because nothing further has been submitted formally
on the issues since the hearing, I will now resolve the issues —
including the question of transfer — implicated by the
outstanding motion without the prospect of further input by the
parties.  From all that appears, the parties' lack of input is
the result of indifference, passivity, indolence or benighted
strategic judgment.  I, nevertheless, undertake resolution while
noting that there is some disagreement among courts about how
the relevant statutory transfer provisions — 28 U.S.C § 1404(a),
§ 1406(a), and § 1631 — fit together.  *See* 15 CHARLES ALAN WRIGHT ET
AL., FEDERAL PRACTICE AND PROCEDURE § 3842, at 20-36 (4th ed. 2013).  I
will take the approach I find most sensible in light of
governing case law but observe where other courts might diverge.

1.   <u>Transfer under 28 U.S.C. § 1406(a) and § 1631</u>

Where personal jurisdiction is lacking, both 28 U.S.C
§ 1406(a) and § 1631 permit me to transfer a case if it could
have been brought in the transferee court and transfer is "in

the interest of justice." *See TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, 366 F. Supp. 3d 195, 213-14 (D. Mass. 2019).[3] The Supreme Court has held that § 1406(a), which applies where venue is improper, allows for transfer even if the transferor court does not have personal jurisdiction. *Goldlawr, Inc.* v. *Heiman*, 369 U.S. 463, 466 (1962). In *Goldlawr*, the Court explained that § 1406(a) serves "the general purpose . . . of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Id.* at 466-67.

As for § 1631, in the First Circuit the provision's broad reference to situations where a court "finds that there is a want of jurisdiction" has been construed to include cases in which personal jurisdiction is lacking. *Fed. Home Loan Bank of*

---

[3] Other courts might also employ § 1404(a) where personal jurisdiction is lacking. *See* 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3844 at 62 n.17 & accompanying text (4th ed. 2013). However, I have interpreted § 1404(a) under First Circuit precedent "to allow transfer of a case only if [the court where it was filed] has jurisdiction over the case in the first instance." *Ferris* v. *Darrell*, No. 18-10204-DPW, 2020 WL 4431763 at *10 n.20 (D. Mass. July 31, 2020) (citing *TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, 366 F. Supp. 3d 195, 217 (D. Mass. 2019)). *See also Albion* v. *YMCA Camp Letts,* 171 F.3d 1, 2 (1st Cir. 1999) ("Given. . . the lack of personal jurisdiction over the defendant. . ., transfer under § 1404(a) is clearly inappropriate."). I will do so here as well. After canvasing the relevant transfer provisions, I focus specifically on § 1406(a) and § 1631 in considering transfer when Massachusetts, as the potential transferor court, does not have personal jurisdiction over certain of the parties. *Id.*

*Boston* v. *Moody's Corp.*, 821 F.3d 102, 111-20 (1st Cir. 2016)
(*abrogated on other grounds*, *Lightfoot* v. *Cendant Mortg. Corp.*,
580 U.S. 82 (2017)).  Because § 1631 directs that a court
"shall" transfer a case if it is in the interest of justice,
there is a rebuttable presumption under § 1631 that a court
failing to find personal jurisdiction should transfer a case.
*Britell* v. *U.S.*, 318 F.3d 70, 73 (1st Cir. 2003).

2. <u>Transfer under 28 U.S.C. § 1404(a)</u>

Where a court is properly authorized to adjudicate a case,
§ 1404(a) gives the court discretion nevertheless to transfer
the case to a court where it could have been brought "[f]or the
convenience of parties and witnesses, in the interest of
justice."  28 U.S.C. § 1404(a).  While this provision "leaves
much" to my discretion, "unless the balance is strongly in favor
of the defendant, the plaintiff's choice of forum should rarely
be disturbed."  *TargetSmart*, 366 F. Supp. 3d at 217 (quoting
*Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947)).  "In
evaluating whether transfer is appropriate under § 1404(a), I
consider the following factors:

> (1) the convenience of the parties, (2) the convenience
> of the witnesses, (3) the relative ease of access to
> sources of proof, (4) the availability of process to
> compel attendance of unwilling witnesses, (5) cost of
> obtaining willing witnesses, and (6) any practical
> problems associated with trying the case most
> expeditiously and inexpensively."

*Id.* at 218 (quoting *F.A.I. Electronics Corp.* v. *Chambers*, 944 F. Supp. 77, 81 (D. Mass. 1996)); *see also Gulf Oil Corp.*, 330 U.S. at 508.

Although Defendants have used their FED. R. CIV. P. 12(b)(6) motion to dismiss as a vehicle to enforce the forum-selection clause in the Sales Rep Agreement [Dkt. No. 15 at 14-15], I consider it appropriate to examine whether transfer under § 1404(a) is a better option than dismissal.  In *Atlantic Marine Construction Co., Inc.* v. *United States District Court for the Western District of Texas*, the Supreme Court held that § 1404(a) transfer is the appropriate mechanism where a party invokes § 1406(a) or a FED. R. CIV. P. 12(b)(3) motion to dismiss asserting an improper forum (a dismissal grounds not expressly invoked by Defendants here) to enforce a contractual forum-selection clause that points to a different federal forum than where the case is currently being heard.[4]  571 U.S. 49, 59 (2013).  The court explicitly did not resolve whether a court should transfer or dismiss a case in which a defendant has invoked Rule 12(b)(6) to enforce a forum-selection clause.  *Id.* at 61.  There is ongoing debate about what courts should do in

---

[4] If the clause specifies adjudication in a state or foreign forum, transfer is not possible under § 1404(a).  *Atlantic Marine*, 571 U.S. at 60.  Instead, a court in this circumstance should employ the doctrine of *forum non conveniens* and dismiss the case.  *Id.*  As will appear below, I find that a federal court is available under the clause at issue here.

this instance.  *See* Stephen E. Sachs, *Five Questions After
Atlantic Marine*, 66 Hastings L.J. 761, 764-66 (2015).

In a post-*Atlantic Marine* case, as my colleague Judge
Gorton has observed, the First Circuit found that "a valid
forum-selection clause can be enforced through a Rule 12(b)(6)
motion."  *Firemen's Ins. Co. of Washington, D.C.* v. *ACE Am. Ins.
Co.*, 390 F. Supp. 3d 267, 274 (D. Mass. 2019) (Gorton, J.)
(citing *Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*,
775 F.3d 41, 46 (1st Cir. 2014)).  I take *Atlantic Marine* and
the First Circuit's application of *Atlantic Marine* to encourage
transfer, pursuant to any of the available statutory transfer
mechanisms.  This is as an option when a forum-selection clause
is in play and permitting a federal forum transfer would be "in
the interest of justice."  *See Reynoso* v. *LaserShip, Inc.*, 322
F. Supp. 3d 211, 215-17 (D. Mass. 2018) (Gorton, J.).

Section 1404(a) analysis, when the parties' relationship is
augmented by a forum-selection clause, is different from the
general § 1404(a) standard described above.  *Atlantic Marine*
makes clear that, when there is a valid forum-selection clause,
"the plaintiff's choice of forum merits no weight," and instead
"the plaintiff bears the burden of establishing that transfer to
the forum for which the parties bargained is unwarranted."  571
U.S. at 63.  Further, "a court evaluating a defendant's

§ 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. In evaluating the transfer of a case in which there exists a valid forum-selection clause, I am left then to "consider arguments about public-interest factors only," which "rarely defeat a transfer motion." *Id.* Thus, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

### 3. Interplay Among § 1404(a), § 1406(a), and § 1631

Overall, there is usually not much difference whether transfer occurs under § 1404(a), § 1406(a), or § 1631. With § 1406(a) and § 1631, for parties over whom the transferor court has no personal jurisdiction, only the governing law of the transferee court, however, will apply.[5] The governing law of the transferor court does attach under § 1404(a), since the

---

[5] The Second Circuit has synthesized the determination of governing law as follows:

> Federal courts sitting in diversity generally apply the law of the state in which they sit. However, cases that are transferred from one federal district to another present an exception to this general rule. When an action has been transferred, a federal court sitting in diversity must determine whether to apply the law of the transferor state, or the law of the transferee state in which it sits. If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, or 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option.

*Gerena* v. *Korb*, 617 F.3d 197, 204 (2d Cir. 2010).

transferor court is by terms a fully proper forum under this provision.  *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 253 (citing *Van Dusen* v. *Barrack*, 376 U.S. 612 (1964)).  However, that fact often matters little if a combination of choice-of-law principles and agreements between the parties means the law applicable in the transferee court will apply in any event. *Atlantic Marine*, 571 U.S. at 64.

### III. PERSONAL JURISDICTION

It is Defendants Dr. Hill, Mr. Moore, and Mr. Stoller who move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Neither Mr. Hill nor ClosedRPLA has moved to dismiss on this basis; consequently, those parties waive any personal jurisdiction defense.  Mass. R. Civ. P. 12(h)(1); Fed. R. Civ. P. 12(h)(1).[6]

Because "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state," *Ticketmaster-New York, Inc.* v. *Alioto,* 26 F.3d 201, 204 (1st Cir. 1994), I examine whether personal jurisdiction is permitted over Dr. Hill, Mr. Moore, and Mr. Stoller under the Due Process Clause of the Fourteenth Amendment

---

[6] I will nevertheless in the interest of completeness and as a dimension of meaningful comparison address personal jurisdiction over Mr. Hill and ClosedRPLA in the analysis for this Memorandum.

to the U.S. Constitution and the Massachusetts Long-Arm Statute. Personal jurisdiction must be allowed under both for Mr. Lewis's claims against these moving defendants to proceed in this court. *See Cossart* v. *United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015). I find personal jurisdiction has not been demonstrated as to Dr. Hill, Mr. Moore, and Mr. Stoller under either the Long-Arm Statute or the Due Process Clause.

**A.   *Legal Requirements***

1.   <u>Massachusetts Long-Arm Statute</u>

The Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, § 3, permits courts to exercise personal jurisdiction over a person in a variety of circumstances. The statute's requirements are similar to but distinct from those under the Due Process Clause, so I must analyze personal jurisdiction under both provisions. *See SCVNGR, Inc.* v. *Punchh, Inc.*, 85 N.E.3d 50, 54-55 (Mass. 2017); *see also Cossart*, 804 F.3d at 18. Two scenarios under which the Long-Arm Statute extends personal jurisdiction are relevant in this case.

First, the statute covers anyone "who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . *transacting any business* in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a) (emphasis added). This "transacting any business" hook is interpreted "in a generous manner" and requires me to "focus on 'whether the

defendant[s] attempted to participate in the commonwealth's economic life." *Cossart*, 804 F.3d at 18 (quoting *United Elec., Radio & Mach. Workers of Am.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992)).

Second, the statute covers anyone

who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission outside this commonwealth if he *regularly does or solicits business*, or *engages in any other persistent course of conduct*, or *derives substantial revenue* from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3(d) (emphasis added).

2. <u>Due Process Clause Generally</u>

The Supreme Court has outlined requirements for personal jurisdiction under the Due Process Clause and the First Circuit has applied them consistently. Starting with first principles, a court may exercise general or specific jurisdiction. *Massachusetts Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). General jurisdiction is based on a defendant's "continuous and systematic activity, unrelated to the suit, in the forum state," while specific jurisdiction is based on "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Id.* Mr. Lewis presents no arguments in support of general jurisdiction; that is understandable because it would plainly be a fruitless battle when none of the moving Defendants targeted by the claims

relevant to them in the Complaint lives in Massachusetts or apparently spends time in this state.  Consequently, I turn my attention to specific jurisdiction.

There are three requirements to establish specific personal jurisdiction: 1) relatedness, 2) purposeful availment, and 3) reasonableness.  *A Corp.* v. *All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016).

First, as to relatedness, I "must ask whether the asserted causes of action arise from or relate to the defendant's contacts with the forum."  *Carreras* v. *PMG Collins*, LLC, 660 F.3d 549, 554 (1st Cir. 2011).

Second, as to purposeful availment, I "must consider whether the defendant purposefully availed [himself] of the protections of [Massachusetts] laws by means of those contacts, such that the defendant could reasonably foresee being haled into [Massachusetts] courts."  *Id.*  This inquiry is meant "to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  *A Corp.*, 812 F.3d at 60 (quoting *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995)).  I "focus on the defendant's intentionality, and the cornerstones of purposeful availment - voluntariness and foreseeability."  *Id.*

Third, as to reasonableness, I "must consider whether an exercise of jurisdiction is consistent with principles of

justice and fair play." *Carreras*, 660 F.3d at 554.  This
analysis is based on at least five "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest
> in obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

*Ticketmaster-New York, Inc.*, 26 F.3d at 209.

**B.   *Application to Defendants***

1.   <u>Dr. Hill and Mr. Moore</u>

Because Dr. Hill and Mr. Moore are said to be involved in
the same manner, I pair them together for this branch of my
analysis.  To reiterate the pertinent facts, Dr. Hill is a
resident of Alabama [Dkt. No. 1-3 ¶ 3] and Mr. Moore is alleged
to be a resident of South Carolina [*Id.* ¶ 4] On March 9, 2019,
Mr. Hill proposed them both as directors and they were elected
to the board.  [*Id.* ¶¶ 19-20]  This was about a year after Mr.
Lewis signed the Redemption Agreement returning the unvested
equity plan shares to OpenALPR.  [*Id.* ¶¶ 13, 19; *see* Dkt. No. 9-
5]  After Dr. Hill and Mr. Moore became directors, the board
ratified the proposed asset sale to Novume.[7]  [*Id.* ¶ 20]  Mr.

---

[7] Mr. Lewis asserts in his briefing that communications made by
Mr. Stoller to Mr. Lewis can be attributed to Dr. Hill and Mr.
Moore because Mr. Stoller was an agent of the company and these
two became directors.  [Dkt. No. 12 at 5]  I am unwilling to
entertain this argument, since Defendants correctly point out

Lewis has not pled any additional contacts between these two defendants and Massachusetts.

This pleading is insufficient to subject Dr. Hill and Mr. Moore to jurisdiction in Massachusetts.  Jurisdiction is not permitted under the Massachusetts Long-Arm Statute, because Mr. Lewis's allegations do not show that the defendants "attempted to participate in the commonwealth's economic life," *Cossart*, 804 F.3d at 18, and likewise the allegations do not show that either defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in Massachusetts.  Mass. Gen. Laws ch. 223A § 3(d).

Returning to the constitutional analysis under the Due Process Clause, while recognizing that failure under the Massachusetts Long-Arm Statute effectively negates personal jurisdiction for Dr. Hill and Mr. Moore, I proceed in the interest of completeness to apply the prongs for specific jurisdiction.

First, with respect to relatedness, Mr. Lewis has not demonstrated any nexus between his claims and activities of Dr.

---

that Mr. Stoller is not shown in the Complaint before me to be an agent for *the individual members* of the board.  [Dkt. No. 15 at 10-11]  Further, such a relationship would only be in effect for purposes of the July 2019 email, because these defendants were not board members when Mr. Stoller sent a letter to Mr. Lewis in September 2018.

Hill or Mr. Moore in Massachusetts.  The closest these
defendants came to acting in Massachusetts is their ratification
of the sale and their alleged failure to ensure Mr. Hill
returned to Mr. Lewis the redeemed shares or paid him his July
commissions, the effects of which Mr. Lewis may have felt in
Massachusetts.  However, "in-forum effects of extra-forum
activities" do not generally "suffice to constitute minimum
contacts."  *Mass. Sch. of Law at Andover, Inc.*, 142 F.3d at 36;
*see also Phillips Exeter Acad.* v. *Howard Phillips Fund*, 196 F.3d
284, 289 (1st Cir. 1999) ("personal jurisdiction [in a tort
case] must probe the causal nexus between the defendant's
contacts and the plaintiff's cause of action.").

Second, with respect to purposeful availment — though the
failure under the relatedness prong is fatal on its own as to
Mr. Lewis's claims against Dr. Hill and Mr. Moore — in the
alternative I find no showing Dr. Hill and Mr. Moore have done
anything to avail themselves purposefully of Massachusetts laws.
The defendants are on solid ground to point to the unilateral
nature of Mr. Lewis's Massachusetts residency.  [Dkt. No. 15 at
10]  The fact that Mr. Lewis happens to reside in Massachusetts
cannot mean Dr. Hill and Mr. Moore intended to avail themselves
of the laws of Massachusetts when they have taken minimal
actions elsewhere that impacted him in this state — and impacted
him in no way specifically relevant to his place of residency.

Thus, Mr. Lewis's allegations fail the purposeful availment prong as well.

Third, with respect to reasonableness, the gestalt factors strongly disfavor haling Dr. Hill and Mr. Moore into a court in Massachusetts.  These defendants, as residents of Alabama and South Carolina (or Virginia) respectively, face a burden in appearing here.  Additionally, Massachusetts has little interest in adjudicating this dispute with respect to these defendants, given that all of the individual parties but the plaintiff are residents of other states and ClosedRPLA is a Florida corporation.  The fact that the choice of Massachusetts law to govern the Stock Purchase Agreement appears to be a private choice between Mr. Hill, acting on behalf of OpenALPR, and Mr. Lewis and not a choice of the other defendants, and that none of the events at issue transpired in Massachusetts — except perhaps for communications with Mr. Lewis delivered from out of state — stands against Massachusetts as the forum for adjudication.

While Mr. Lewis's interest in obtaining convenient and effective relief may superficially favor his ability to resolve this case in Massachusetts because he is a local resident with a Massachusetts lawyer, there are no obvious barriers, except perhaps personal resources, keeping him from also litigating this case elsewhere.  Florida, by contrast seems a more appropriate forum as the state in which ClosedRPLA is

incorporated, and given that jurisdiction as to the other defendants would appear to be available there as well.  In any event, the general interest of the judicial system in obtaining effective resolution of this controversy does not strongly favor Massachusetts.

More broadly stated, the common interests of all relevant sovereigns in promoting essentially the same substantive social policies disfavor Massachusetts as a forum.  There are no special substantive Massachusetts social policies at issue, but the case does implicate concerns regarding governance of business entities under Florida law that would best be addressed in a Florida forum.

Because Mr. Lewis's claims against these two defendants fail each of the requirements for specific jurisdiction, I find jurisdiction lacking over Dr. Hill and Mr. Moore in Massachusetts.

### 2.  Mr. Stoller

Defendant Jeffrey Stoller, OpenALPR's attorney, lives in Miami, Florida.  [Dkt. No. 1-3 ¶ 5]  The Complaint alleges Mr. Stoller presided over the March 9, 2019 shareholder meeting [*id.* ¶ 19]; that Mr. Stoller drafted the letter Mr. Hill sent to Mr. Lewis on September 16, 2018, seeking Mr. Lewis's consent to a sale of OpenALPR for $4.5 million "or more" [*id.* ¶ 17]; and that on information and belief, at the time he drafted that letter,

Mr. Stoller knew Mr. Hill had distributed the treasury stock to himself. [*Id.*]  The Complaint further alleges Mr. Stoller purported to represent the interests of OpenALPR but instead solely represented Mr. Hill's interests, and that in this connection, Mr. Stoller misrepresented the terms of the proposed asset sale to Mr. Lewis. [*Id.* ¶ 21]  Finally, the Complaint alleges Mr. Stoller sent an email to Mr. Lewis on July 5, 2019, telling him that if he did not accept Mr. Hill's settlement proposal, Mr. Hill might put the sale proceeds into risky investments, thereby harming Mr. Lewis, who owned stock in the company. [*Id.* ¶ 22]

As with Dr. Hill and Mr. Moore, this pleading is insufficient to subject Mr. Stoller to jurisdiction in Massachusetts.  The analysis is similar to the analysis regarding Dr. Hill and Mr. Moore; the only material factual difference is that Mr. Lewis has alleged two communications that Mr. Stoller made to Mr. Lewis while Mr. Lewis was presumably in Massachusetts.  Those two communications — a letter in September 2018 and an email in July 2019 — make no meaningful difference for purposes of the Massachusetts Long-Arm Statute or the Due Process Clause.  The outcome as to Mr. Stoller is the same as that with respect to Dr. Hill and Mr. Moore; I find no showing that personal jurisdiction should be permitted at this stage under either the Long-Arm Statute or the Due Process Clause.

Mr. Lewis has made only a conjectured showing to support his claims regarding Mr. Stoller. Overcoming a Rule 12(b)(2) motion requires "more than simply surmis[ing] the existence of a favorable factual scenario; [a plaintiff] must verify the facts alleged through materials of evidentiary quality." *Lombardi*, 239 F.3d at 27. Mr. Lewis has not even provided copies of communications he contends were received in Massachusetts.

I must conclude then that personal jurisdiction cannot be extended to Mr. Stoller in Massachusetts. This conclusion is in line with case law holding that a handful of contacts with a Massachusetts resident in the course of business are insufficient to establish personal jurisdiction. *See, e.g.*, *Phillips*, 530 F.3d at 29 ("It stretches too far to say that [defendant], by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts."); *Mass. Sch. of Law at Andover, Inc.*, 142 F.3d at 36-37 (from phone call, mailing, and participation in Boston meeting, defendant "could not reasonably have foreseen being haled into a Massachusetts court to answer allegations of a wide-ranging conspiracy.").

### 3.   Mr. Hill and ClosedRPLA

In contrast to my findings with respect to Dr. Hill, Mr.

Moore, and Mr. Stoller, I find Massachusetts does have personal jurisdiction over both Mr. Hill and ClosedRPLA.  I note that neither Mr. Hill nor ClosedRPLA contest personal jurisdiction in Massachusetts; it is only Defendants Dr. Hill, Mr. Moore, and Mr. Stoller who have moved to dismiss under FED. R. CIV. P. 12(b)(2).  However, I will still undertake a personal jurisdiction analysis for Defendants Mr. Hill and ClosedRPLA because the question of personal jurisdiction becomes important later when I determine which statutory transfer mechanism is available for the claims and parties in this case.

Mr. Hill and ClosedRPLA's knowledge that they were transacting business in Massachusetts is evidenced by the inclusion of Mr. Lewis's Massachusetts address in the Stock Purchase Agreement.[8]  [Dkt. No. 9-4 at 2]  The Stock Purchase Agreement's creation of a multi-year business relationship with a Massachusetts resident satisfies the Massachusetts Long-Arm

---

[8] Having failed to contest personal jurisdiction, Mr. Hill and ClosedRPLA also do not contest that the former acted on behalf of the latter (then OpenALPR) in executing the Stock Purchase Agreement [Dkt. No. 9-4 at 2, 11] or that the former's knowledge can be imputed to the latter for these purposes. *See Sunrise Properties, Inc.* v. *Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 679 N.E.2d 540, 543 (Mass. 1997) ("notice to a corporation's agent is notice to the corporation"); *Dinco* v. *Dylex Ltd.*, 111 F.3d 964, 972 (1st Cir. 1997) (director's knowledge can be imputed to company); *see also Sealcell Corp. v. Berry*, 150 So. 634, 634 (Fla. 1933) ("The change in the name of a corporation has no more effect upon its identity, as a corporation, than the change in the name of a natural person has upon his identity").

Statute that asks whether a party has engaged in a "persistent course of conduct" to participate in the economic life of the commonwealth.

Second, this court's personal jurisdiction over Mr. Hill and ClosedRPLA satisfies the Due Process Clause because the (1) relatedness, (2) purposeful availment, and (3) reasonableness prongs are all satisfied.  The Stock Purchase Agreement, in which Mr. Hill and ClosedRPLA acknowledge Mr. Lewis's residence, is a central issue in the present dispute.  That Mr. Hill and ClosedRPLA entered into a contract with an individual who lives in Massachusetts counsels in favor of finding that it was reasonably foreseeable that Mr. Hill and ClosedRPLA would be haled into Massachusetts courts.  Finally, while the five gestalt factors cut in different directions for and against personal jurisdiction, I conclude that requiring Mr. Lewis and ClosedRPLA to appear in Massachusetts is still reasonable. For those reasons, briefly stated, I find, quite apart from reasons of FED. R. CIV. P. 12(h)(1) waiver, that Massachusetts would have personal jurisdiction over Defendants Mr. Hill and ClosedRPLA.

## C.  *Propriety of Transfer*

Having found personal jurisdiction lacking for Dr. Hill, Mr. Moore, and Mr. Stoller, I turn to whether transfer of this case would be appropriate.  I first examine the propriety of venue, a key issue in the transfer analysis that the colloquy

during the November 24, 2021 motion hearing made clear, but the
Defendants chose not to address in their briefing. [*See*
Transcript of Motion Hearing at 15-16, *Lewis* v. *Hill et al.*, No.
1:19-cv-12500-DPW (ECF No. 18) (D. Mass. Nov. 24, 2021)]  While
I find that venue in Massachusetts is appropriate as to Mr.
Stoller, Mr. Hill, and ClosedRPLA, I find Massachusetts would
not be an appropriate venue for Dr. Hill and Mr. Moore.  This
finding becomes relevant to the decision whether to transfer
this case to the Middle District of Florida because the question
of personal jurisdiction and venue can determine the statutory
mechanism by which I can transfer the case.

Next, I evaluate whether transfer is appropriate for claims
against Dr. Hill, Mr. Moore, and Mr. Stoller under either or
both § 1406(a) and § 1631, which I have identified as avenues
for transfer where there is a want of personal jurisdiction.  I
then evaluate whether transfer is appropriate for the remaining
claims — against Mr. Hill and ClosedRPLA — separately or under
some combination of § 1404(a), § 1406(a), and § 1631.

1.  <u>Venue Availability</u>

Although Defendants did not bring a Rule 12(b)(3) motion,
and therefore have waived any argument that venue in
Massachusetts is improper, FED. R. CIV. P. 12(h)(1), I
nevertheless address this issue in order to explain thoroughly
the potential premises for transfer of this case, *see Day* v.

*City of Galveston*, 480 Fed. App'x. 119, 120-21 (3d Cir. 2012) (noting authority of a district court to consider propriety of venue *sua sponte*) (per curiam) (unpublished); *Gomez* v. *USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (same) (per curiam).

The federal requirements for venue are laid out in 28 U.S.C. § 1391. After finding that I lack personal jurisdiction over Dr. Hill, Mr. Moore, and Mr. Stoller, the only hook that would apparently allow for venue to be proper with respect to these three defendants is in § 1391(b)(2), which says, in part, that a civil action may be brought in "a judicial district in which *a substantial part of the events or omissions giving rise to the claim occurred*." 28 U.S.C. § 1391(b)(2) (emphasis added). The First Circuit construes this phrase liberally, looking "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim" and taking a "holistic view of the acts underlying the claim," rather than focusing on the actions of one party. *Astro-Med, Inc.* v. *Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Uffner* v. *La Reunion Francaise, S.A.*, 244 F.3d 38, 42, 43 n.6 (1st Cir. 2001)). This approach recognizes that "when the events underlying a claim have taken place in different places, venue may be proper in any number of districts." *Uffner*, 244 F.3d at 42.

In *Uffner*, which involved an insurance claim, the sinking of a boat in Puerto Rico made Puerto Rico a proper venue because "the event [was] connected to the claim inasmuch as [the] requested damages include[d] recovery for the loss" of the boat. *Id.* at 43. The panel further noted the defendants had not alleged "that continuing the suit in the district of Puerto Rico would confer a tactical advantage to [the plaintiff] or prejudice their own case in any way." *Id.* The panel observed that there was an "absence of a forum-selection clause in the insurance policy indicating [defendants'] preferred forum for litigation." *Id.*

In *ScanSoft, Inc.* v. *Smart*, which concerned the stock options belonging to the former director of a company, Judge O'Toole found venue proper in Massachusetts based on negotiations that occurred between the individual, Smart, who was in England and California, and the company's CEO, who was in Massachusetts. No. Civ.A. 03-10456-GAO, 2003 WL 23142188, at *1, *3 (D. Mass. Nov. 17, 2003). A key aspect of the dispute was whether the individual and the CEO "entered into a consulting agreement which would have allowed for the continued vesting of Smart's [stock] option" and given him an option on additional stock shares. *Id.* at *3. The negotiations were over the alleged consulting agreement and Smart's decision not to seek re-election to the board of directors. *Id.*

*Uffner* and *ScanSoft, Inc.* are helpful here by standing for the proposition that we are not looking for the single, best judicial district to determine venue, *Uffner*, 244 F.3d at 42, but rather for a location in which substantial activities giving rise to Lewis's claims occurred, *ScanSoft, Inc.*, 2003 WL 23142188 at *3.  In applying these lessons to the present case, it is evident to me that Massachusetts would provide a venue in this case to only a fraction of the named Defendants, while a judicial district in Florida could provide a venue for all five Defendants.

I start with venue as to Dr. Hill, Mr. Moore, and Mr. Stoller.  As discussed in my analysis of personal jurisdiction, the events in this case as relates to these three defendants only tangentially involve the Commonwealth.  Neither Dr. Hill nor Mr. Moore had any communication with Mr. Lewis in Massachusetts.  I find that for Dr. Hill and Mr. Moore, there is nothing to support proper venue in Massachusetts.

For Mr. Stoller, the facts alleged are closer to supporting Massachusetts as a proper venue and I find them sufficient.  On September 16, 2018, Mr. Lewis apparently received a letter in Massachusetts that Mr. Stoller drafted and concerned the proposed asset sale.  [Dkt. No. 1-3 ¶ 17]  And on July 5, 2019, Mr. Lewis apparently received an email from Mr. Stoller in Massachusetts threatening to put proceeds of the sale into risky

39

investments if Mr. Lewis did not accept Mr. Hill's settlement proposal.  [*Id.* ¶ 22]  These facts approximate certain facts in *Uffner* and *ScanSoft,* in that the communications were not only made at key moments in the course of events but also are directly part of issues in dispute.

The facts alleged most strongly support the propriety of venue in Massachusetts as to Mr. Hill and ClosedRPLA.  Mr. Lewis was seemingly a Massachusetts resident for the duration of his time with OpenALPR and his communications with Mr. Hill – who, as president and chairman of the board, acted as an agent for OpenALPR and then ClosedRPLA – would have taken place between Massachusetts and wherever Mr. Hill was located.  [*See* Dkt. No. 1-3 ¶¶ 11, 13, 17]  These communications include those Mr. Lewis alleges were misleading.  [*Id.*]  And the facts are similar to *Uffner* and *ScanSoft* in the same way as with respect to Mr. Stoller, taking the holistic view of the facts that the First Circuit directed in *Astro-Med, Inc.*, 591 F.3d at 12.  In the final analysis, I find venue is appropriate in Massachusetts as to the claims against Mr. Hill, Mr. Stoller, and ClosedRPLA but not appropriate for the claims against Dr. Hill and Mr. Moore.

2.  <u>Claims against Dr. Hill, Mr. Moore, and Mr. Stoller</u>

At this point, after finding that I lack personal jurisdiction over three defendants in this case, I consider whether transfer is appropriate under either § 1406(a) or § 1631

40

for claims against Dr. Hill, Mr. Moore, and Mr. Stoller.

Both provisions require me to transfer the case to a court where the suit "could have been brought," § 1406(a); § 1631, so I start with an exploration of whether there is such a court for the Defendants the Plaintiff passively persists in keeping conjoined in this litigation.  In particular, I ask if the potential transferee court would have subject matter jurisdiction and personal jurisdiction over the pending matter and defendants.  *See TargetSmart*, 366 F. Supp. 3d at 213.  The Middle District of Florida[9] satisfies both criteria.  There is no question about subject matter jurisdiction, this matter being a diversity action properly brought in federal court.  *See* 28 U.S.C. § 1332.  As for personal jurisdiction, Mr. Stoller is a Florida resident, so there is no dispute about whether he may be haled into court in that state.  [Dkt. No. 1-3 ¶ 5]  Dr. Hill and Mr. Moore apparently participated in the board meeting at which they were made directors of ClosedRPLA, a Florida corporation, and the claims against them grow out of this event;

---

[9] I consider the Middle District of Florida specifically because ClosedRPLA is incorporated in Florida and has a principal business address in Jacksonville.  Jacksonville is a statutory place of holding court in the Middle District of Florida.  28 U.S.C. § 29(c).  My conclusions about an appropriate United States District Court extend to the Northern District and Southern District of Florida, both of which, of course, are also Florida-based courts.

thus personal jurisdiction would be satisfied as to them as well. [*Id.* ¶¶ 19-20]

The various and disparate claims Mr. Lewis is alleging against Defendants make it difficult to determine if there is a single judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The defendants' actions that allegedly harmed Mr. Lewis might have arisen from the different states in which the individual defendants reside or from the location in which the March 9, 2019 shareholder meeting and subsequent board meeting occurred. There remains considerable uncertainty as to the location of these meetings or, for example, the locations from which communications were sent to Mr. Lewis.

Given the impossibility of determining whether there is a single judicial district from which the events or omissions giving rise to the claim occurred, I rely on the § 1391(b)(3) catchall provision that allows "any judicial district in which any defendant is subject to the court's personal jurisdiction" to provide a venue if "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3). Having previously determined that the state of Florida has personal jurisdiction over Dr. Hill, Mr. Moore, and Mr. Stoller, I conclude that § 1391(b)(3) allows any judicial district in Florida to provide a venue. Given this,

I now consider whether transfer would be in the "interest of justice" pursuant to § 1406(a) and § 1631.

I start with § 1631.  Section 1631 presents a presumption in favor of transfer that "may be rebutted if the record, taken as a whole, indicates that 'the administration of justice would be better served by dismissal.'"  *TargetSmart*, 366 F. Supp. 3d at 214 (quoting *Britell*, 318 F.3d at 73).  I see nothing to suggest that is true here.  Mr. Lewis has brought cognizable claims against Dr. Hill, Mr. Moore, and Mr. Stoller.  The defendants also, by their own admission during the November 24, 2021 motion hearing in this case, chose not to brief the issue of transfer as an alternative to dismissal, well knowing that transfer was an available alternative.  [*See* Transcript of Motion Hearing at 15-16, *Lewis* v. *Hill*, No. 1:19-cv-12500-DPW (ECF No. 18) (D. Mass. Nov. 24, 2021)]

I also find transfer pursuant to § 1406(a) to be appropriate.  Section 1406(a) applies when venue is improper, which I found to be the case for the claims against Dr. Hill and Mr. Moore.  Unlike § 1631, § 1406(a) does not on its face have a presumption in favor of transfer because it does not contain the same "shall" language.  However, the Supreme Court has made clear that with § 1406(a), as with § 1631, the Congressional purpose was to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies

on their merits." *Goldlawr, Inc.*, 369 U.S. at 466-467. Given that purpose behind both § 1406(a) and § 1631, I find transfer, as opposed to dismissal, appropriate under the statutes. I will transfer the claims against Dr. Hill and Mr. Moore pursuant to § 1406(a) and the claims against Mr. Stoller pursuant to § 1631.

3. Claims against Mr. Hill and ClosedRPLA

Since I am inclined to transfer the claims against Dr. Hill, Mr. Moore, and Mr. Stoller to the Middle District of Florida, I also consider whether to transfer the claims against Mr. Hill and ClosedRPLA to that District - although I have personal jurisdiction over both defendants and have determined that venue in Massachusetts is appropriate - in order that all claims may be adjudicated together. I note that Mr. Lewis's claims could have been brought at the outset in the Middle District of Florida against Mr. Hill and ClosedRPLA, because the company is a Florida corporation with a Jacksonville principal business address, and Mr. Hill was apparently in attendance at the March 9, 2019 shareholder and board meetings that are part of Mr. Lewis's claim. [Dkt. No. 1-3 ¶¶ 19-20] *See generally* 28 U.S.C. § 1404(a) (requiring the transferee court be an appropriate forum in order to transfer). Because I have found that venue is proper, § 1404(a) presents a mechanism for transfer of parties over whom I have personal jurisdiction; otherwise, if venue is improper, the claims against Mr. Hill and

ClosedRPLA could be transferred under § 1406(a).[10]

My inquiry under § 1404(a) is focused on whether transfer of the remaining claims would serve "the convenience of parties and witnesses, in the interest of justice," § 1404(a), and I look to the factors outlined above drawn from *Gulf Oil, see TargetSmart*, 366 F. Supp. 3d at 218; *see also Gulf Oil*, 330 U.S. at 508. The first five factors are a wash. For the first factor, the Middle District of Florida is less convenient for Mr. Lewis than Massachusetts, though not insurmountably so. ClosedRPLA is a Florida corporation, and Florida might be marginally more convenient for Mr. Hill, an Alabama resident in charge of a Florida corporation. For factors two through five, proof and witnesses seem equally accessible in Florida and Massachusetts. However, the sixth factor speaks strongly in favor of transfer. I have already concluded for purposes of this analysis that I would transfer the claims against Dr. Hill, Mr. Moore, and Mr. Stoller to the Middle District of Florida. Thus, it would be much more practical, expeditious, and inexpensive to adjudicate all claims together in that forum. Though "the plaintiff's choice of forum should rarely be disturbed," *id.* at 217 (quoting *Gulf Oil*, 330 U.S. at 508),

---

[10] Section 1631 is not available for transfer of claims against Mr. Hill and ClosedRPLA because neither subject matter nor personal jurisdiction is lacking in Massachusetts for these defendants.

given these practicalities and no reasons against transfer
except for Mr. Lewis's status as a Massachusetts resident, "the
balance is strongly in favor" of transfer for claims against Mr.
Hill and ClosedRPLA.  *See id.* (quoting *Gulf Oil*, 330 U.S. at
508).

In the alternative, if venue in Massachusetts for Mr. Hill
and ClosedRPLA is improper, while I would not be able to rely on
§ 1404(a), *Ferris*, 2020 WL 4431763 at *10 n.20, I could invoke
§ 1406(a).  My analysis would be much the same as for my §
1406(a) analysis above regarding the other defendants, except
transfer would be even more suitable as to these remaining
claims – especially against Mr. Hill – because they are at the
heart of Mr. Lewis's suit.

### IV. FORUM-SELECTION CLAUSE

Although I have at this point found bases for transferring
all claims in this suit to the Middle District of Florida, I
will also address a further basis for transfer that arises when
analyzing the merits of Mr. Lewis's Complaint.  This is the
forum-selection clause in Mr. Lewis's employment contract, the
Sales Rep Agreement, which weighs heavily in favor of transfer.

### A.    *Choice-of-Law*

I apply the choice-of-law rules of the forum state,
Massachusetts, to determine which state's laws to apply to the
merits.  *Levin* v. *Dalva Bros., Inc.*, 459 F.3d 68, 73 (1st Cir.

2006) (citing *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  However, as a general matter, if I find no conflict between the law of Massachusetts and another state's laws that may apply, I need not decide the choice-of-law issue, thus avoiding the need to wade into murky legal waters.

B.   *The Clause at Issue*

At the outset of my merits survey, while considering the Rule 12(b)(6) dimension to the motion to dismiss brought by the defendants, I took note of a forum-selection clause in the Sales Rep Agreement.  This agreement is closely related to Mr. Lewis's claim that the company has failed to pay him his July commissions, a claim Mr. Lewis makes in service of his larger claim that Mr. Hill has breached a fiduciary duty he owes Mr. Lewis.  The pertinent clause in the Sales Rep Agreement says: "This Agreement shall be construed and enforced according to the laws of the State Florida [sic] and any dispute under this Agreement must be brought in this venue and no other."[11]  [Dkt. No. 9-6 at 6]  The clause appears to counsel strongly in favor of transfer or dismissal.  *See Atlantic Marine*, 571 U.S. at 63.

---

[11] Although this contract is not attached to the Complaint itself, it is integral and included in associated submissions regarding Defendants' motion to dismiss.  Consequently, I may consider it where, as here, its authenticity is unquestioned. *Rivera*, 575 F.3d at 15.

1.  <u>Is the forum-selection clause in effect?</u>

Before interpreting or enforcing the forum-selection clause, I must resolve a dispute about whether the clause is in effect.  *See Lambert* v. *Kysar*, 983 F.2d 1110, 1114-16 (1st Cir. 1993) (using state law to resolve whether a forum-selection clause was in effect before enforcing the clause).  Mr. Hill cites only Florida law on this issue [Dkt. No. 15 at 14-15], and Mr. Lewis does not cite the law of either Florida or Massachusetts [Dkt. No. 12 at 11-12]  Because I independently find that the outcome would be the same under Massachusetts or Florida law, I need not decide which should apply.

Mr. Lewis disputes that the original Sales Rep Agreement is still in effect, arguing that when he and Mr. Hill orally agreed to a new compensation arrangement in April 2018 [Dkt. No. 1-3 ¶ 13], the oral agreement effectively terminated the original contract and replaced it, because the Sales Rep Agreement says it can only be modified in writing.  [Dkt. No. 12 at 11; *see* Dkt. 9-6 at Art. 16]

Under Florida law, when a contract requires that changes be made in writing, "any alleged oral modification is generally disposed of as a matter of law, and the court should enforce the contract as written."  *Perera* v. *Diolife LLC*, 274 So.3d 1119, 1122-23 (Fla. Dist. Ct. App. 2019).  However, "[a] written contract or agreement may be altered or modified by an oral

agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it."  *Id.* at 1123 (quoting *Professional Insurance Corp.* v. *Cahill*, 90 So.2d 916, 918 (Fla. 1956)).  This exception requires the proponent to show:

> (a) that the parties agreed upon and accepted the oral modification (i.e., mutual assent); and (b) that both parties (or at least the party seeking to enforce the amendment) performed consistent with the terms of the alleged oral modification (not merely consistent with their obligations under the original contract); and (c) that due to plaintiff's performance under the contract as amended the defendant received and accepted a benefit that it otherwise was not entitled to under the original contract (i.e., independent consideration).

*Okeechobee Resorts, L.L.C.* v. *E Z Cash Pawn, Inc.*, 145 So.3d 989, 995 (Fla. Dist. Ct. App. 2014) (emphasis omitted).

It seems likely this exception applies, because both Mr. Lewis and Mr. Hill apparently followed the oral agreement, but the forum-selection clause would be in effect either way.  If the exception does apply, the new oral agreement would merely modify the existing contract, not entirely replace it, and so the forum-selection clause would remain in effect.  *See Perera*, 274 So.3d 1119 at 1123 (existing contract "may be altered or modified" (quoting *Professional Insurance Corp.*, 90 So.2d at 918)).  Alternatively, if the exception fails to apply, then the default under Florida law is to disregard the purported oral

modification and rely on the original contract, which contains
the forum-selection clause.  *See id.* at 1122-23.

The same outcome is reached under Massachusetts law.  As in
Florida, a clause that allows modification "only by a written
instrument does not necessarily bar oral modification of [a]
contract."  *Cambridgeport Sav. Bank* v. *Boersner*, 597 N.E.2d
1017, 1022 (Mass. 1992).  But whether or not the parties orally
updated the Sales Rep Agreement, the original forum-selection
clause would remain in effect.  Even when construing the facts
of the Complaint in the light most favorable to Mr. Lewis, there
is not enough evidence to support a novation.  A novation in
Massachusetts requires "the agreement of the parties to an
extinguishment of the prior contract and to a substitution of
the new contract."  *Pagounis* v. *Pendleton*, 753 N.E.2d 808, 811
(Mass. App. Ct. 2001).

> Although 'a substituted contract or novation may be
> inferred despite a lack of express language to that
> effect,' and may be based solely on the circumstances
> and conduct of the parties, a finding of an intent to
> discharge the preexisting indebtedness should rest on
> a 'clear and definite indication' of such intent.

*Id.* (internal citations omitted) (quoting *Lipson* v. *Adelson*, 456
N.E.2d 470, 472 (Mass. App. Ct. 1983)).  Mr. Lewis has shown
nothing to this effect in his Complaint.

2.   Is the forum-selection clause enforceable?

Having concluded that the forum-selection clause is in

50

effect, I now address the question of whether the clause is enforceable. *Atlas Glass & Mirror, Inc.* v. *Tri-North Builders, Inc.*, 997 F.3d 367, 374 (1st Cir. 2021) (citing *Rafael Rodriguez Barril, Inc.* v. *Conbraco Indus., Inc.,* 619 F.3d 90, 92 (1st Cir. 2010)).  I find that the forum-selection provision in the Sales Rep Agreement is enforceable. Although there is debate about whether this is a question for state law or federal law, *see* Stephen E. Sachs, *Five Questions After* Atlantic Marine, 66 HASTINGS L.J. 761, 766-68 (2015), I need not decide that question because forum-selection clauses are enforceable under Florida law, *Producers Supply* v. *Harz*, 6 So.2d 375, 376 (Fla. 1942), Massachusetts law, *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 646 N.E.2d 741, 743 (Mass. 1995), and federal law, *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Rivera*, 575 F.3d at 16-17 (concluding it was unnecessary to reach unsettled issue of whether forum-selection clauses are to be treated as substantive or procedural for *Erie* purposes because federal common law and Puerto Rico law agreed as to enforceability (quoting *Lambert*, 983 F.2d at 1116 & n.10)).

Mr. Lewis argues that, at least under Massachusetts law, the clause is still unenforceable because enforcement must be "fair and reasonable" and the one before me is not. *See Jacobson*, 646 N.E.2d at 743; *see also M/S Bremen*, 407 U.S. at 10 (holding that forum-selection clauses are "prima facie valid and

should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."). [Dkt. No. 12 at 11-12]  He says a clause requiring adjudication in Florida is unreasonable because the only ties to Florida are OpenALPR being incorporated there and Mr. Stoller's residency. [*Id.*]  This argument is not enough when forum-selection clauses "enjoy presumptive validity and can be challenged only in limited circumstances," reflecting "the core principle in the law of contracts that courts generally should respect the intentions of contracting parties." *Boland* v. *George S. May Intern. Co.*, 969 N.E.2d 166, 170 (Mass. App. Ct. 2012).  Indeed, the fact that Mr. Lewis's former employer is incorporated in Florida strongly supports the reasonableness of adjudication in that state.

I also find the forum-selection clause enforceable as a matter of federal law.  As the First Circuit has observed, the Supreme Court has identified four possible grounds for finding a forum-selection clause of a contract unenforceable:

(1) the clause was the product of "fraud or overreaching,";
(2) "enforcement would be unreasonable and unjust";
(3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court,"; or
(4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision"

*Rafael Rodriguez Barril, Inc.* v. *Conbraco Indus., Inc.,* 619 F.3d
at 93 (quoting *Bremen,* 407 U.S. at 15, 18) (internal citations
omitted).  It is not categorically unreasonable to require Mr.
Lewis to litigate in Florida given that he contracted with a
company based in Florida and agreed in the Sales Rep Agreement —
signed at the beginning of his professional relationship with
the company — to bring any dispute to a Florida venue.  Further,
Mr. Lewis has not claimed that the Sales Rep Agreement, itself,
was the product of fraud or overreaching nor can he support an
argument that Florida is so gravely difficult and inconvenient a
forum that he would effectively be deprived of his day in court.
Finally, there is no public policy that weighs in favor of
allowing Mr. Lewis to bring a case in Massachusetts.  In fact,
policy supports enforcing the bargained-for clause and
transferring the case to a forum both parties agreed upon prior
to the dispute.

     After determining that a contractual forum-selection clause
is enforceable, the next question to address is whether the
clause is mandatory or permissive.  *Atlas Glass* 997 F.3d at 374
(citing *Rivera,* 575 F.3d at 17).  The use of the words "shall"
and "must" in the provision both point to interpreting this
clause as mandatory, requiring exercise of jurisdiction and
venue in Florida rather than merely allowing for it.  [Dkt. No.
9-6 at Art. 17]  Additionally, the clause specifies that "no

other" venue than Florida may construe and enforce the Sales Rep Agreement, making abundantly clear that this provision is a mandatory forum-selection clause. [*Id.*]

Finally, under the *Atlas Glass* analysis, I must ask whether the claims at issue in the present case fall within the scope of the forum-selection clause, *Atlas Glass*, 997 F.3d at 374. The clause covers "any dispute under [the Sales Rep Agreement]." [Dkt. 9-6 at Art. 17]  While only one aspect of Mr. Lewis's Complaint can be said to pertain to Mr. Lewis's work and compensation as a sales representative for OpenALPR, I find that the Complaint does partially fall within the ambit of the Sales Rep Agreement and therefore, within the scope of the forum-selection clause of the contract. *See Solomon Law Group, P.A.* v. *Dovenmuehle Mortgage, Inc.*, 332 So.3d 56 (Fla. Dist. Ct. App. 2021) (finding that contractual forum-selection clause applies despite claim sounding in tort rather than breach of contract).

3.   <u>Does the forum-selection clause exclude a federal forum?</u>

With the forum-selection clause in effect and enforceable, the question becomes what the clause means.  Again, the clause says:  "This Agreement shall be construed and enforced according to the laws of the State Florida [sic] and any dispute under this Agreement must be brought in this venue and no other." [Dkt. No. 9-6 at Art. 17]  As defense counsel put it at the

November 24, 2021 motion hearing, albeit understating the contested question significantly, this language is "not as clear as it could be." [Transcript of Motion Hearing at 17, *Lewis* v. *Hill et al.*, No. 1:19-cv-12500-DPW (ECF No. 18) (D. Mass. Nov. 24, 2021)] If the clause refers only to the state courts of Florida, then I cannot transfer the case directly; instead, I must dismiss pursuant to the doctrine of *forum non conveniens*. *See supra* n.4. If, however, the clause includes federal courts in Florida, then direct transfer to those courts is possible. *See Atlantic Marine*, 571 U.S. at 60.

Courts addressing similar interpretation issues have boiled the question down to whether a clause refers to sovereignty or geography.[12] *American Soda, LLP* v. *U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 925 (10th Cir. 2005). If contract language specifies "state courts to the exclusion of the federal courts, it is a term of sovereignty," whereas if the language encompasses state courts "and the federal court sitting in" the state, it is a term of geography. *Id.* Thus, the First Circuit found a clause requiring resolution "in accordance with the law, and in the courts, of the Commonwealth of Massachusetts" to

---

[12] I note that there may be an embedded choice-of-law question here, similar to the debate I discussed briefly when I addressed the enforceability of forum-selection clauses under Florida, Massachusetts, and federal law. *See supra* at Section IV.B.2. However, courts generally have not called out any *Erie* issue; rather, they have followed federal common law standards.

refer to sovereignty because the construction specified courts
"of" the Commonwealth rather than "in" it.  *LFC Lessors, Inc.* v.
*Pac. Sewer Maint. Corp.*, 739 F.2d 4, 6-7 (1st Cir. 1984); *see
also New Jersey* v. *Merrill Lynch & Co., Inc.*, 640 F.3d 545, 548-
49 (3d Cir. 2011) (confronting similar construction and
concluding likewise); *American Soda*, 428 F.3d at 926 (same);
*FindWhere Holdings, Inc.* v. *Sys. Env't Optimization, LLC*, 626
F.3d 752, 755 (4th Cir. 2010) (same); *Dixon v. TSE Int'l Inc.*,
330 F.3d 396, 398 (5th Cir. 2003) (per curiam) (same).

Where language is more complicated than simply the
difference between "in" and "of," interpretation becomes more
difficult.  For example, courts have reached different
conclusions about forum-selection clauses that use the name of a
state directly in front of the word "courts," such as saying
"Florida courts."  *Compare Regis Assocs.* v. *Rank Hotels (Mgmt.)
Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) (finding "Michigan
Courts" included federal courts) with *Smart Comms. Collier Inc.*
v. *Pope Cty. Sheriff's Office*, 5 F.4th 895, 898 (8th Cir. 2021)
(finding "Arkansas courts" referred only to state courts).

A federal court in Michigan confronted a forum-selection
clause quite similar to the one here.  *Intelligent Business
Innovations, LLC* v. *Alliance Computing, Inc.*, No. 16-cv-11862,
2016 WL 4524722 at *4 (E.D. Mich. Aug. 29, 2016)(Rosen, J.).
That clause said: "This agreement shall be construed and

enforced according to the laws of the state of Florida, Orange County, Orlando and any dispute under this Agreement must be brought in this venue and no other." *Id.* The only differences between that clause and the one before me in this matter is the specification of a county and city after "Florida," as well as the word "of" after the word "state." In *Intelligent Business Innovations*, Judge Rosen found the clause too vague to require a transfer. *Id.* He reasoned that "the clause does not actually specify a venue at all," since "'[t]he laws of the state of Florida, Orange County, Orlando' is not a venue," and "[t]o the extent that an Orange County, Florida venue is specified, the clause does not give any direction as to the appropriate court or level of court." *Id.*

Using this framework and these cases for guidance, I find the forum-selection clause in the Sales Rep Agreement to be geographic in nature and to allow for venue in any court in Florida, including a federal court. Despite the awkward construction, the clause uses the word "in" to refer to the "State Florida [sic]."[13] The use of the preposition "in" in

---

[13] I take Judge Rosen's point in construing similar language in *Intelligent Business Innovations* that the reference to a venue could be read to refer to the full phrase "laws of the State Florida [sic]." However, as he seems to concede in the same paragraph, the reference can also be read to refer exclusively to "State Florida [sic]", which seems the most natural reading, given "Florida" is a venue while "laws of the State Florida [sic]" are not.

forum-selection clauses has heavily favored the conclusion that a clause refers to geography and not sovereignty. *See New Jersey*, 640 F.3d at 548-49.

Further, I do not find the phrasing unduly vague. While the phrasing could more clearly specify its reach beyond state court to federal court, the reference to Florida is plain, and I do not see a need to specify the type of court, *see, e.g.*, *LFC Lessors, Inc.*, 739 F.2d at 6 (not raising any vagueness issue in addressing clause that required adjudication "in accordance with the law, and in the courts, of the Commonwealth of Massachusetts").

The word "venue" itself is typically understood as a geographic term. *See* 28 U.S.C. § 1390(a) (defining venue as referring to "the geographic specification of the proper court or courts" for a civil action); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3801 at 2 (4th ed. 2013) ("'Venue' refers to locality, the place within the relevant judicial system where a lawsuit should be heard according to the applicable statutes or rules."). And the clause itself is labeled in the agreement as a "Governing Law" clause, focusing on the law to be applied rather than the court to be applying the law.

## C.   *Propriety of Transfer*

Given my conclusions about the forum-selection clause, it is clear that either a transfer to the Middle District of

Florida or dismissal of issues arising under the Sales Rep Agreement could be appropriate. *See Atlantic Marine*, 571 U.S. at 64 ("[F]orum-selection clauses should control except in unusual cases."); *id.* at 61 (leaving open the question whether dismissal is an appropriate response to a Rule 12(b)(6) motion based on a forum-selection clause). I am left then with three questions. First, should I transfer or dismiss the relevant issue or issues? Second, how do my conclusions about the forum-selection clause bear on the various claims in this case? Third, how does my reasoning with respect to the forum-selection clause affect my reasoning about transfer elsewhere in this memorandum?

Starting with the first question, as I have outlined, *see supra* Part II.C, the decision to transfer pursuant to § 1404(a) or dismiss pursuant to Rule 12(b)(6) in these circumstances is left to my discretion. Nevertheless, I take *Atlantic Marine* generally to encourage transfer. In light of Mr. Lewis's claim concerning unpaid commissions and the fact that his initial choice to sue in Massachusetts does not appear to have been an attempt to gain an unfair advantage, I see no reason to dismiss and will instead transfer pursuant to the available transfer statutes.

Second, while I initially focused on the forum-selection clause in relation to Mr. Lewis's claim concerning unpaid

commissions, I must consider how this claim and the clause fit into the context of Mr. Lewis's collection of claims as a whole. In his Complaint, Mr. Lewis does not present the claim for unpaid commissions as its own independent matter; rather, he presents it as part of his larger claim that Mr. Hill, Dr. Hill, and Mr. Moore breached the fiduciary duty owed Mr. Lewis. Arguably, I might transfer only the matter of the unpaid commissions, because that is the sole issue in Mr. Lewis's Complaint that arises directly under the Sales Rep Agreement, and thus also the only issue clearly subject to the transfer preference evident in *Atlantic Marine*.

However, I have broad discretion to transfer a matter or matters to another court "in the interest of justice."  To the extent I would be performing a § 1404(a) transfer on issues adjacent to the claim about unpaid commissions, I consider whether transfer is appropriate under the general § 1404(a) standard, rather than the standard specific to a forum-selection clause in the *Atlantic Marine* sense.  This broad § 1404(a) transfer would be specifically for the claims against Mr. Hill and ClosedRPLA, because, as previously explained, the claims against Dr. Hill, Mr. Moore, and Mr. Stoller are not

subject to transfer under § 1404(a).[14]  *See supra* Part III.C.2.
I have examined the same factors drawn from *Gulf Oil* in my
previous § 1404(a) analysis.  *See supra* Part III.C.3.  The only
factor I find compelling is the sixth: "any practical problems
associated with trying the case most expeditiously and
inexpensively."  *TargetSmart*, 366 F. Supp. 3d at 218 (quoting
*F.A.I. Electronics Corp.* v. *Chambers*, 944 F. Supp. at 81).
Since I am transferring the unpaid commissions issue to the
Middle District of Florida, it would be substantially more
practical, expeditious, and inexpensive to have the other claims
against Mr. Hill and ClosedRPLA heard there as well.

Lastly, I address how my reasoning here affects my
reasoning elsewhere in this Memorandum.  Briefly summarized, my
finding that a valid and enforceable forum-selection clause
makes consideration of a key issue only possible in Florida
enhances the advisability of transfer of the claims against Dr.
Hill, Mr. Moore, and Mr. Stoller under § 1406(a) and § 1631.  It
is all the more "in the interest of justice" to transfer these
claims to the Middle District of Florida if there is a
convincing reason why another claim in the case must be decided
in Florida.

---

[14] Nonetheless, as I also address below, the fact of my decision
to transfer these issues bears on my § 1406(a) and § 1631
analyses.

Mr. Lewis's poorly pleaded Complaint presents difficulties
in determining whether to transfer the case, in its entirety, to
a venue in Florida.  This difficulty is compounded by
Defendants' unhelpful response in which they ask the Court to
dismiss the case outright, rather than engage the question I
raised to the parties *sua sponte* — whether to transfer the case
to a Florida venue for adjudication on the merits.  This failure
of engagement is a transparently strategic attempt to amplify
litigation costs for Mr. Lewis, whose own counseled confusion
regarding the issues is manifest.  Although I gave Plaintiff's
counsel an opportunity to amend and reframe the lawsuit to
address my concerns, Mr. Lewis — through the inaction of his
counsel — continues to rely on the originally filed Complaint in
which all of his substantive allegations are embedded in Counts
I and II and some of his proposed remedies (an accounting and
equitable relief) are contained in separate Counts III and IV.

The core of Mr. Lewis's Complaint centers around the unpaid
commissions he believes he is owed; this is an alleged breach of
the Sales Rep Agreement. The forum-selection clause and the
choice-of-law clause of the Sales Rep Agreement both weigh in
favor of transferring the unpaid commissions portions of Counts
I and II to a Florida venue.

The other allegations contained in Counts I and II of Mr.
Lewis's Complaint concern, "among other things, engaging in

self-dealing, failing to disclose all of the material facts relating to the proposed transaction, [and] depriving Mr. Lewis of equity to which he was entitled." [Dkt. No. 1-3 ¶ 27]  As I told the parties at the November 24, 2021 motion hearing, I can discern potential corporate law-based claims that would best be addressed through a derivative suit against ClosedRPLA.  *See* Transcript of Motion Hearing at 9-10, *Lewis* v. *Hill et al.*, No. 1:19-cv-12500-DPW (ECF No. 18) (D. Mass. Nov. 24, 2021).  In Counts III and IV, Mr. Lewis asks for an accounting of corporate funds and an injunction against ClosedRPLA from making risky investments, respectively, equitable remedies that should be pursued through a derivative action.  Yet in the face of my raising the question of the appropriateness of a shareholder derivative suit at the November 24, 2021 motion hearing, Mr. Lewis, by inaction, apparently maintains that his allegations are best pursued as they are currently conceived, as a breach of fiduciary duty suit against the Defendants.  Although allegations in Mr. Lewis's complaint only partially arise out of the Sales Rep Agreement containing the forum-selection clause, I determine that it is in the interest of justice, not to mention most practicable, to transfer the entire case to Florida, rather than retaining any portion of it for adjudication in Massachusetts.

## V. MERITS ISSUES

Because 1) I lack personal jurisdiction over three of the defendants sued in this Complaint, 2) I may not adjudicate a key issue due to a forum-selection clause, and 3) I have found it proper to transfer the entirety of this case to the Middle District of Florida, I do not resolve any of Mr. Lewis's claims on the merits.

## VI. FINAL CONSIDERATIONS

I have found it proper to transfer the entirety of this case to Middle District of Florida relying on multiple bases and a combination of § 1404(a), § 1406(a), and § 1631. I aim here to synthesize my reasoning across this case and address issues that arise in pulling this reasoning together.

Transfer is proper under § 1406(a) as to the claims against Dr. Hill and Mr. Moore because I do not have personal jurisdiction over them and because venue in Massachusetts is not appropriate for the claims against them.

As to Mr. Stoller, for whom I lack personal jurisdiction but have found that Massachusetts would provide an appropriate venue, I transfer the claims against him pursuant to § 1631.

In turn, transfer is proper under § 1406(a) as to claims against Mr. Hill and ClosedRPLA, because, as is the case with the other defendants, it is "in the interest of justice" to transfer. Moreover, transfer is especially appropriate under

§ 1404(a) as to the unpaid commissions claim – a claim that is part of the larger breach-of-fiduciary-duty claim against Mr. Hill – due to a forum-selection clause that makes adjudication of this issue only possible in Florida.  Consequently, transfer of all other issues to Florida serves "the interest of justice."

While three different transfer provisions are in play in this case, and there are numerous bases for transfer, it is important to note that which rules are used in this case makes no difference for purposes of the law that applies or for the appellate rights available.  For appellate purposes, there is no difference among § 1404(a), § 1406(a), and § 1631 in the First Circuit.  *Subsalve USA Corp.* v. *Watson Manuf., Inc.*, 462 F.3d 41, 47 (1st Cir. 2006).

## VII. CONCLUSION

For the reasons set forth more fully above, I GRANT the FED. R. CIV. P. 12(b)(2) dimension to Defendants' motion to dismiss [Dkt No. 9] to the extent that I direct the Clerk to TRANSFER this matter to the United States District Court for the Middle District of Florida for full adjudication in that forum and I correspondingly DENY the FED. R. CIV. P. 12(b)(2) dimension to Defendants' motion to dismiss as to Dr. Margie Hill, David Moore, and Jeffrey Stoller. Having determined to transfer this case because I lack jurisdiction over all parties, I do not resolve Defendants' collective FED. R. CIV. P. 12(b)(6) dimension

to their motion to dismiss, which is reserved for disposition in the transferee court.[15]

---

[15] As is evident from certain citations in the text of this Memorandum, when presented with reluctant and recalcitrant parties in the recent past, I have transferred two reported cases using the protocol deployed in this case.  The subsequent history of those cases provides insight into the practical impact of those decisions.

In *TargetSmart*, a 2019 case decided prior to the onset of the Covid pandemic, I transferred to the United States District Court for the District of Columbia a matter in which the District of Massachusetts did not have personal jurisdiction over all parties and, in doing so, I declined to address the merits as raised by the motions to dismiss.  366 F. Supp. 3d at 219.  The District of Columbia District Court then addressed certain of those claims, dismissing counts against one of the defendants.  *TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, No. 19-cv-312-RMC, 2019 WL 4540543 (D.D.C. Sept. 19, 2019). Following additional motion to dismiss practice and confronting a discovery deadline of August 12, 2020, the parties on July 24, 2020 filed a joint stipulation of dismissal with prejudice. No. 19-cv-RMC, Docket Entry No. 117 (D.D.C. July 24, 2020).

In *Ferris*, I transferred to the United States District Court for the Southern District of New York, a matter in which, even after afforded the opportunity to file a Second Amended Complaint, Plaintiff was unable to establish personal jurisdiction as to one of the defendants.  In doing so, I sought to assure that "the transferee judge [would be provided] with a clean slate on which to set out an appropriate scheduling order in that Court." 2020 WL 4431763, at *1.  I noted as well the demonstrated capacity of the courts to address "the challenges of the [then -] current pandemic is an increased willingness and competence in conducting virtual hearings" so that "the difficulties attendant upon inconvenient [] travel outside of Massachusetts can be minimized." *Id.* at *10 n.21.  *Ferris*, which involved a minor child, was reported settled as to the child and the defendant over which there was no jurisdiction in Massachusetts, and as to all parties thereafter.  No. 20-cv-06021-NRB, Docket Entry No. 93 (S.D.N.Y. Jan. 19, 2021), Docket Entry No. 94 (S.D.N.Y. June 9, 2021), Docket Entry No. 95 (S.D.N.Y. July 9, 2021).   Settlement was memorialized in a July 12, 2021 Order providing $2,500 to the child from the defendant over which there was no jurisdiction in Massachusetts and,

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

$40,000 to the child from other defendants.  Plaintiff's counsel
was simultaneously awarded $14,166.66 in attorney's fees and
$6,320.30 in costs. No. 20-cv-06021-NRB, Docket Entry No. 96
(S.D.N.Y. July 12, 2021).